UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEFFREY COMANDINI,

    Plaintiff,

CASE NO.:

vs.

GREYSTONE HEALTHCARE
MANAGEMENT CORP., a Foreign
Profit Corporation, GREGG
HOPPER, Individually and CONNIE
BESSLER, Individually,

    Defendants.                    /

## COMPLAINT & DEMAND FOR JURY TRIAL

Plaintiff, JEFFREY COMANDINI, ("COMANDINI" or "Plaintiff") was an employee of Defendants, GREYSTONE HEATHCARE MANAGEMENT CORP., ("GREYSTONE"), GREGG HOPPER, Individually, and CONNIE BESSLER, Individually, (collectively referred to hereafter as "Defendants") and brings this action for unpaid overtime compensation, unpaid minimum wages, liquidated damages and other relief under the Fair Labor Standards Act, as amended, 29 U.S.C. § 216(b) (the "FLSA").

## JURISDICTION AND VENUE

1. Jurisdiction in this Court is proper as the claims are brought pursuant to the Fair Labor Standards Act, as amended (29 U.S.C. §201, et seq., hereinafter called the "FLSA") to recover unpaid overtime wages, minimum wages, an additional equal amount as liquidated damages and reasonable attorney's fees and costs.

2. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331 and the FLSA.

3. At all times material hereto, Plaintiff, COMANDINI was a resident of Pinellas County, Florida.

4. Defendants, conduct business in, Pinellas County, Florida, therefore venue is proper in the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1391(b)(1) & (c).

## PARTIES

5. Defendant, GREYSTONE, a Foreign Profit Corporation, is in the business of operating a health and rehabilitation business located at 1000 24th Street North, St. Petersburg, Florida 33713.

6. At all times material to this action, Gregg Hopper was an individual resident of the State of Florida, who, as the Chief Operating Officer of Defendant, GREYSTONE, operated GREYSTONE and who regularly exercised the day-to-day authority to: (a) hire and fire employees of GREYSTONE; (b) determine the work schedules and rates of pay for the employees of GREYSTONE and (c) control the finances and operations of GREYSTONE. By virtue of having regularly exercised that authority on behalf of GREYSTONE, Mr. Hopper is/was an employer as defined 29 U.S.C. § 201, et seq.

7. At all times material to this action, upon information and belief, Connie Bessler was an individual resident of the State of Florida, who, as the Chief Executive Officer of Defendant, GREYSTONE, operated GREYSTONE and who regularly exercised the day-to-day authority to: (a) hire and fire employees of GREYSTONE; (b) determine the work schedules and rates of pay for the employees of GREYSTONE and (c) control the finances and operations of GREYSTONE. By virtue of having regularly exercised that authority on behalf of GREYSTONE, Ms. Bessler is/was an employer as defined 29 U.S.C. § 201, et seq.

8. At all material times to this action, all Defendants were, and continue to be "employers" of Plaintiff within the meaning of the FLSA.

9. Plaintiff, COMANDINI was employed by Defendant as a non-exempt employee from on or around March 2017 through August 2019.

## COVERAGE

10. At all material times, Defendant was an enterprise covered by the FLSA, and as defined by 29 U.S.C. § 203(r) and 203 (s).

11. At all material times, Defendants were an employer as defined by 29 U.S.C. § 203(d).

12. At all material times, Defendant had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

13. At all times material, Defendant has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 203(s)(1) of the FLSA, in that the company had two or more employees:

   a. Engaged in commerce; or

   b. Engaged in the production of goods for commerce; or

   c. Handling, selling or working on goods or materials that have been moved in or produced for commerce. (i.e. wheelchairs, medications, computers, and/or office supplies).

14. Therefore, Defendant is an enterprise covered by the FLSA, and as defined by 29 U.S.C. §203(r) and 203(s).

15. Additionally, Plaintiff is individually covered under the FLSA.

## GENERAL ALLEGATIONS

16. Defendant, GREYSTONE, is a company classified as a health and rehabilitation center.

17. Defendants were an "employer" of Plaintiff within the meaning of the FLSA.

18. Plaintiff was an employee of Defendants within the meaning of the FLSA.

19. Plaintiff's employment began in March 2017 with Defendants as part of the "Administrator in Training" ("AIT") program. In this program, Plaintiff was incorrectly classified by Defendants as an unpaid "intern" despite the fact that all of his duties and responsibilities were for things Defendants paid other employees to do and were in furtherance of Defendants' business.

20. Plaintiff performed work for Defendants for 2000+ hours in the AIT program, but was never paid any wages whatsoever for this entire time period despite the fact that Defendants oversaw, controlled and supervised all of his work. Plaintiff also always performed a range of duties and responsibilities which were also duties and responsibilities of a paid "Assistant Administrator" for Defendant throughout the entirety of the AIT program until it ended in January of 2018.

21. For instance, Plaintiff's scheduled days began every day at 8 a.m. with him checking on the status of the patients/residents which were assigned to him by Defendants. After making his morning rounds, Plaintiff would assist the Administrator of the facility where he worked with the morning staff meetings each day, then Plaintiff would spend the remainder of his workday doing non-exempt work such as handling customer service disputes with patient families and handling employee discipline. Mr. Comandini was also responsible for interviewing and participating in the hiring decisions for numerous staff members.

22. Typically, Mr. Comandini was scheduled by Defendants to work each day from 8 p.m. until 6 p.m., but depending on the needs of his assigned patients/residents and other administrative tasks he performed around Defendants' facility, Plaintiff would sometimes work until 7 or 8 p.m.

23. Plaintiff complained to Defendant, Greystone's CEO regarding not being paid during the AIT program, but nothing was ever done by Defendant except to promise Plaintiff that he would receive a salaried position as an Administrator at one of Defendant's facilities should he complete the AIT program.

24. Between January 2018 and March 2019, Plaintiff was paid an hourly wage by Defendants as Defendants' "business manager."

25. On or about March of 2019, Plaintiff was promoted by Defendants to an Assistant Administrator, which represented a raise in pay for Plaintiff.

26. Thereafter, on or about May of 2019, Plaintiff again complained via email to Defendant's CEO, Connie Bessler, and Defendant's Chief Operating Officer, Gregg Hopper, regarding the fact that he was never paid for the 2000+ hours of documented work he performed for Defendant.

27. Plaintiff's email complaining about Defendants' violations of the FLSA is "protected activity" under the FLSA.

28. Thereafter, on July 17, 2019, Plaintiff passed the necessary exam to obtain his Florida Nursing Home Administrator license. Upon receiving this news, he believe he would be promoted to an Administrator position as that was what he was promised by Defendants all along.

29. All or most of the other Administrators who passed their exam and obtained their Administrator licenses were quickly promoted by Defendants to Administrator.

30. For Plaintiff, however, he was told by Defendants that he was "not ready" despite the fact that he had no prior write-ups or performance coaching. The only difference between Plaintiff and the other employees who recently received their Administrator licenses after passing the exam was Plaintiff's written complaints of FLSA violations two months prior in May of 2019.

31. Accordingly, after Defendants retaliated against Plaintiff and subjected him to an adverse employment action by failing to promote Plaintiff, as Defendants had promised to do, Plaintiff felt he had no choice, but to resign so that he could pursue his goal of being a Nursing Home Administrator.

32. Plaintiff regularly worked in excess of forty (40) hours per week from approximately March 2017 and throughout his employment with Defendant in the AIT program until he completed said program in January 2018.

33. Defendants' failure to pay Plaintiff for any work performed from March 2017 until January 2018 resulted in wages that fell below the statutory minimum wage during one or more workweeks contrary to §206(a) of the FLSA.

34. Despite working more than forty (40) hours per week during one or more work weeks, Defendants failed to pay Plaintiff overtime compensation at a rate of time and one-half times his regular rate of pay for hours worked over forty (40) in a workweek, contrary to §207(a) of the FLSA.

35. Defendants knowingly, willfully, or with reckless disregard carried out its illegal pattern or practice of failing to pay proper overtime and minimum wage compensation to

Plaintiff. In fact, after Plaintiff complained regarding not being paid, Defendants began paying other Administrators in Training either hourly wages and/or a salary to compensate them for their work.

36. Defendants did not act in good faith or reliance upon any of the following in formulating its pay practices: (a) case law, (b) the FLSA, 29 U.S.C. § 201, *et seq.*, (c) Department of Labor Wage & Hour Opinion Letters or (d) the Code of Federal Regulations.

37. Defendants acted willfully in failing to pay Plaintiff in accordance with the law.

38. There is a sufficient causal connection between Plaintiff's complaints of FLSA violations by Defendants and Defendants failure to promote Plaintiff and/or constructively discharging Plaintiff due to the close temporal proximity between those events.

39. Defendants failed to maintain proper time records as mandated by law.

40. Defendants failed to post informational posters as required by law advising its employees of their rights under the FLSA.

## COUNT I - RECOVERY OF OVERTIME COMPENSATION

41. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1-40 above.

42. Plaintiff was entitled to be paid time and one-half of his regular rate of pay for each hour worked in excess of forty (40) per workweek.

43. From on or about March 2017 through January 2018 during his employment with Defendants as an Administrator in Training, Plaintiff worked overtime hours without receiving time and one-half compensation for same during one or more workweeks contrary to the FLSA.

44. Plaintiff should have earned time and one-half compensation for each hour worked in excess of forty (40) hours per workweek.

45. Defendants had knowledge of the overtime hours worked by Plaintiff.

46. Defendants were aware of the laws which require its employees be paid overtime compensation on a week by week basis.

47. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. 255(a).

48. As a result of Defendants' intentional, willful and unlawful acts in refusing to pay Plaintiff his proper overtime wages during one or more workweeks, Plaintiff has suffered damages, plus incurring reasonable attorneys' fees and costs.

49. As a result of Defendants' willful violation of the FLSA, Plaintiff is entitled to liquidated damages.

50. Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 29 U.S.C. §216(b).

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor against Defendants;

    a. Awarding Plaintiff overtime compensation in the amount due to him for the time worked in excess of forty (40) hours per workweek;

    b. Awarding Plaintiff liquidated damages in an amount equal to the overtime award, or alternatively, awarding pre-judgment interest;

    c. Awarding reasonable attorney's fees and costs and expenses of the litigation pursuant to 29 U.S.C. §216(b); and

    d. Ordering any other further relief the Court deems just and proper.

## **COUNT II – FLSA RECOVERY OF MINIMUM WAGES**

51. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1-40 above.

52. Plaintiff was entitled to earn the statutory minimum wage rate for all hours worked per week while employed as a non-exempt employee for Defendants.

53. Plaintiff is entitled to receive the applicable statutory Florida minimum wage rate for all hours worked during his employment with Defendants pursuant to 207(a) of the FLSA.

54. Plaintiff is entitled to receive the applicable statutory Florida minimum wage rate for all hours worked during his employment with Defendants pursuant to 29 C.F.R. 778.5.

55. Defendants failed to compensate Plaintiff at the applicable statutory minimum wage rate for all hours worked per week during one or more workweeks from on or around March 2017 through January 2018, while Plaintiff was employed by Defendants as an Administrator in Training.

56. Defendants were aware of the laws which required that its employees be paid at least the statutory minimum wage for all hours worked per workweek.

57. Despite its knowledge of these laws, Defendants violated the FLSA's provision on minimum wages (29 U.S.C. §206).

58. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. 255(a).

59. As a result of Defendants' intentional, willful and unlawful acts in refusing to pay Plaintiff his proper minimum wages during one or more workweeks, Plaintiff has suffered damages, plus incurring reasonable attorneys' fees and costs.

60. As a result of Defendants' willful violation of the FLSA, Plaintiff is entitled to liquidated damages.

61. Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 29 U.S.C. §216(b).

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor against Defendant;

   a. Awarding Plaintiff his unpaid minimum wages;

   b. Awarding liquidated damages in an amount equal to the minimum wage award, or alternatively, awarding pre-judgment interest;

   c. Awarding reasonable attorney's fees and costs and expenses of the litigation pursuant to 29 U.S.C. §216(b); and

   d. Ordering any other further relief the Court deems just and proper.

## COUNT III – FLSA RETALIATION

62. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1-40 above.

63. Defendants violated 29 U.S. Code § 215(a)(3) by failing to promote and constructively terminating Plaintiff in retaliation for seeking unpaid minimum wage and overtime compensation.

64. In or about May of 2019, Plaintiff wrote an email to Defendants' CEO and COO, complaining about the fact that he was never paid minimum wage and/or overtime pay while he was employed by Defendants as an Administrator in Training.

65. Approximately two months later, Defendants failed to promote Plaintiff to an Administrator after he received his Administrator's license as Defendants had previously promised

and constructively discharged him as a result.

66. Defendants' actions have caused an adverse employment action against Plaintiff and he has suffered damages as a result of Defendants' retaliation

67. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has been damaged.

WHEREFORE, Plaintiff, Jeffrey Comandini, demands judgment against Defendants for retaliation and seeks damages, back pay, front pay, liquidated damages, reasonable attorneys' fees and costs incurred in this action, declaratory relief, and any and all further relief that this Court determines to be just and appropriate.

### COUNT IV – VIOLATION OF FLORIDA MINIMUM WAGE ACT- 448. 110

68. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1-40 above.

69. Under the Florida Minimum Wage Act, Plaintiff was entitled to be paid the applicable minimum wage for each hour worked by him for Defendants.

70. During his employment with Defendants, Plaintiff worked from March 2017 until January 2018 for Defendants without receiving any pay whatsoever.

71. As a result of this practice, Plaintiff has not been paid the minimum wage in Florida by Defendants for each and every hour worked by him. In 2017, the Florida minimum wage was set at $8.10 per hour and in 2018, the Florida minimum wage was $8.25 per hour.

72. As a result of Defendants' intentional, willful and unlawful acts in refusing to pay Plaintiff proper minimum wage compensation, Plaintiff has suffered damages, plus incurring reasonable attorneys' fees and costs.

73. Defendants did not have a good faith reason for their failure to pay Plaintiff

minimum wages dictated by law.

74. As a result of Defendants' willful violation of the FMWA, Plaintiff is entitled to liquidated damages.

75. Pursuant to 448.110, Plaintiff is entitled to the costs of this action and a reasonable attorney's fee.

76. Plaintiff demands a trial by jury.

WHEREFORE, Plaintiff, Jeffrey Comandini, demands judgment against Defendants for unpaid minimum wage compensation, liquidated damages, reasonable attorneys' fees and costs incurred in this action, declaratory relief, and any and all further relief that this Court determines to be just and appropriate.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable as a matter of right by jury.

Dated: December 18, 2019          Respectfully submitted by,

**/s/ Gregory R. Schmitz**
GREGORY R. SCHMITZ, ESQ.
Florida Bar No.: 0094694
20 North Orange Avenue, Suite 1400
Orlando, Florida 32801
Telephone: (407) 204-2170
Facsimile: (407) 245-3401
E-mail: gschmitz@forthepeople.com
        mbarreiro@forthepeople.com
*Attorney for Plaintiff*